**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| WILLIAM STRIEBE,<br>Plaintiff, | ) | |
| v. | ) | Civil Action<br>File No. 1:26-cv-02674-MHC |
| FILMHEDGE, LLC,<br>MEDIAHEDGE, INC., and<br>JONATHAN DWAYNE ("JON") GOSIER,<br>Defendants, | ) | |
| v. | ) | |
| KRISTY MORGAN,<br>Third-Party Defendant. | ) | |

## PLAINTIFF WILLIAM STRIEBE'S INITIAL DISCLOSURES

COMES NOW WILLIAM STRIEBE (hereafter "Mr. Striebe" or "Plaintiff") and files his Initial Disclosures, showing the Court as follows:

**Disclosure No. 1: State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.**

**Response**

This matter is a diversity breach of contract and fraud case. Mr. Striebe is a resident of Florida. Defendant Filmhedge, LLC (hereafter "FilmHedge") is a Delaware limited liability company. Defendant MediaHedge, Inc. (hereafter "MediaHedge) is a Delaware corporation. Defendant Jonathan D. Gosier ("Gosier") is a Georgia resident who resides in the Atlanta, Georgia. Defendant Gosier serves as the Chief Executive Officer for both Defendant FilmHedge and Defendant MediaHedge.

Federal question jurisdiction also exists because this action arises in part under the laws of the United States, including the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. This Court has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(a).

On or about February 24, 2025, Defendant Gosier emailed Plaintiff Striebe and solicited Plaintiff Striebe's participation in FilmHedge's "microlender" program. In that solicitation and related communications, Defendant Gosier made the following material written representations to induce Plaintiff Striebe to invest:

> (a) <u>Zero Defaults</u>. Defendant Gosier represented that FilmHedge had experienced zero defaults and losses on both its film loans and its repayments to microlenders since 2019, across more than thirty film transactions.

(b) Corporate Guarantee. Defendant Gosier represented that FilmHedge extended a corporate guarantee to all microlenders, meaning that the company would repay principal plus interest from its own resources even if underlying film deals underperformed.

(c) Professional Advisors. Defendant Gosier identified a list of professional advisors engaged by the company, including Holland & Knight, Nelson Mullins, Mauldin & Jenkins CPA, RSM, Synesis Group, and SetApart to create the impression of institutional rigor and legitimacy.

(d) Loan Tape Evidence. Defendant Gosier attached the "Consolidated FH Loan Tapes 2019-2025" as documentary evidence purporting to support his zero-default representation.

(e) In both written and oral statements, Defendant Gosier stated to Plaintiff Striebe that Defendant FilmHedge was backed by $350,000,000.00 in institutional investment "from the likes of Apollo, Jefferies, and Carlyle," which are well-known private equity/private credit firms.

(f) In 2025, Defendant Gosier purposely inflated to Plaintiff the revenue growth projection and equity projection for Defendants MediaHedge and FilmHedge, inducing Plaintiff to loan and invest monies with Defendants.

Based on Defendant Gosier's representations, on March 11, 2025, Plaintiff Striebe signed a Co-Lender Commitment Letter committing $250,000 to Defendant FilmHedge (the "Commitment Letter"). Defendant Gosier signed the Commitment Letter in dual capacities: as Authorized Signer of Defendant FilmHedge, LLC, and as Chief Executive Officer of Defendant MediaHedge, Inc.

On March 12, 2025, Plaintiff Striebe funded the full $250,000 commitment. Under the terms of the Commitment Letter, $295,000 (representing principal plus 18% interest) became due and payable at maturity on March 13, 2026. The Commitment Letter provides that "Time and strict performance are of the essence." The Commitment Letter is governed by Georgia law.

On March 6, 2025 - five days before the Commitment Letter was executed - Defendant Gosier submitted a personal financial statement to Bank of America. That financial statement disclosed, among other things, that: (a) FilmHedge was carried as a business asset with a present valuation of $50,000,000 and related debt of $50,000,000, reflecting no net equity value in the entity; (b) FilmHedge's net operating revenue was approximately $800,000 annually; and (c) Defendant Gosier's liquid cash consisted of approximately $1,000,000 held at Morgan Stanley, with his remaining claimed net worth tied up in illiquid private business interests.

The facts disclosed in the Bank of America financial statement, known to Defendant Gosier at the time of his February 2025 solicitation and his March 2025 execution of the Commitment Letter, contradicted his representations regarding zero defaults and the sufficiency of the corporate guarantee.

Starting in May 2025, Defendant Gosier represented to Plaintiff Striebe in writing that FilmHedge had secured a $750,000,000.00 credit line from Jefferies &

Company that would "support dramatic growth;" "increase profitability;" and "drive the enterprise value;" that FilmHedge had already passed Jefferies' compliance and due diligence review, and that the transaction was moving to closing. This representation regarding the Jefferies' credit facility was a material inducement to Plaintiff Striebe's decision to invest. On June 10, 2025, Plaintiff Striebe invested an additional $300,000.00 in Defendant MediaHedge through a Simple Agreement for Future Equity (the "SAFE"). The SAFE is governed by Delaware law without regard to conflict-of-law principles. The SAFE carries a $50,000,000 Pre-Money Valuation Cap and converts to preferred equity upon an Equity Financing, Liquidity Event, or Dissolution Event as those terms are defined in the SAFE. Pursuant to the terms of the SAFE, in the event of a Dissolution Event, Plaintiff Striebe is entitled to receive his $300,000 Cash-Out Amount before any distributions to common equity holders. Defendants have not disclosed any Equity Financing, Liquidity Event, or Dissolution Event to Plaintiff Striebe. No distribution has been made to Plaintiff Striebe under the SAFE.

The Colbeck Capital Management Proposal Letter, dated February 20, 2026 and signed by Defendant Gosier on February 24, 2026, amends and restates a prior Colbeck proposal dated November 26, 2025. MediaHedge therefore had been seeking to replace its Jefferies credit facility with Colbeck as early as November 2025, months before the March 13, 2026 maturity date and well before Defendant

Gosier gave any indication to Plaintiff Striebe that there might be any payment difficulty.

The Jefferies credit facility had been a centerpiece of Defendant Gosier's pre-investment representations to Plaintiff Striebe. As described above, prior to Plaintiff Striebe's investment, Defendant Gosier had represented in writing that FilmHedge had secured a $750,000,000.00 credit line from Jefferies & Company that would "supercharge the business and support dramatic growth," had passed Jefferies' compliance and due diligence, and was moving to closing. After Plaintiff Striebe's investment, when Plaintiff Striebe inquired about the status of the Jefferies transaction, Defendant Gosier represented that Jefferies was "all set" and was merely working on its preferred form of completion bond with its lawyers. Defendant Gosier thereafter abandoned the Jefferies narrative and pivoted to other memoranda of understanding and ultimately to the Colbeck transaction — without ever disclosing that the $750,000,000.00 credit facility he had touted as nearly closed had never in fact materialized.

The Colbeck term sheet is non-binding. The term sheet states in bold capital letters that it "shall be non-binding and shall not in any way obligate Colbeck or any of its affiliates (or any other party) to perform any transaction outlined or described herein."

Colbeck's willingness to fund is conditioned on "completion of all legal and business due diligence" and on satisfaction of conditions "in Colbeck's sole discretion." Notwithstanding the non-binding character of the Colbeck term sheet, Defendant Gosier repeatedly characterized the Colbeck transaction to Plaintiff Striebe as a near-certain, imminent closing. Those characterizations were materially misleading. The Colbeck arrangement required FilmHedge to pay a $500,000 legal deposit to Colbeck, to maintain a $2 million liquidity reserve, and to secure $2–3 million in additional equity capital—substantial cash demands on a company with only approximately $800,000 in annual operating revenue that simultaneously claimed a corporate guarantee obligation to all microlenders.

The Colbeck transaction was not an isolated proposed financing. In October 2025, in addition to a contemporaneous Jefferies negotiation, Defendant Gosier transmitted to Plaintiff Striebe several other unsigned, non-binding term sheets from prospective lenders, none of which closed.

Upon information and belief, the Jefferies facility never closed, and Defendant Gosier continued to pursue Colbeck and other prospective lenders thereafter while continuing to represent to Plaintiff Striebe that institutional financing was imminent.

The March 13, 2026 maturity date of the Commitment Letter passed without any payment from Defendants to Plaintiff Striebe. Plaintiff Striebe had provided

his UMB Bank wire instructions, including account number ending in –8698 and routing number ending in –5681, in the body of his February 26, 2026 email to Defendant Gosier. On March 13, 2026, Defendant Gosier falsely represented to Plaintiff Striebe that Plaintiff's "original email said they are attached but the message is clipped so we can't see the attachment." The payment instructions were not provided as an attachment. Plaintiff Striebe had written the payment instructions directly in the body of his email. Defendant Gosier intentionally truncated or disregarded the email to manufacture a pretext for non-payment. Defendant Gosier's own April 14, 2026 email to Plaintiff Striebe attached Plaintiff Striebe's original February 26, 2026 email — the very email Defendant Gosier had earlier represented was "clipped" — confirming that the email reached Defendant Gosier intact and refuting his prior representation.

On March 22, 2026, Defendant Gosier offered Plaintiff Striebe "penalty interest or a $25,000 equity grant" as a settlement for the delay, in lieu of the cash repayment of the full $295,000 then past due. That offer constitutes a tacit acknowledgment that Defendants had defaulted. In a subsequent written communication, Defendant Gosier stated that he was not paying Plaintiff Striebe's matured loan because non-payment was "necessary for the good of the shareholders." That statement misrepresents Defendants' legal obligations. Under Georgia law, creditors hold priority over shareholders. The statement also

constitutes an admission that the non-payment was willful and deliberate rather than the product of inability to pay.

A press release published by Deadline.com on April 2, 2026 announced a MediaHedge $200 million joint venture fund but did not identify the institutional partner and referenced "Koo Capital" as arranger rather than Colbeck—inconsistent with Defendant Gosier's earlier representations to Plaintiff Striebe about the Colbeck transaction.

On or about April 27, 2026, Defendant Gosier transmitted to Plaintiff Striebe an updated MediaHedge investor deck. The deck reported FilmHedge historical revenue of $5.8 million for 2024 and $6.0 million for 2025. Those figures are irreconcilable with the approximately $800,000.00 in annual operating revenue Defendant Gosier had certified to Bank of America on March 6, 2025 in his personal financial statement. The deck also repeated the representation that FilmHedge had achieved "$200M deployed, $230M returned (2020-2024)" on "40+ deals" with a "0% Default Rate," notwithstanding the Night and Day cease-and-desist letter, the pre-solicitation defaults to outside vendors, and the financial condition Defendant Gosier had certified to Bank of America. The April 27, 2026 deck reflects a continuing course of post-investment misrepresentation.

As of the date of this submission, Defendants have paid nothing to Plaintiff Striebe on the $295,000 obligation under the Commitment Letter and have paid nothing to Plaintiff Striebe on the $300,000 invested under the SAFE.

On May 13, 2026, Plaintiff Striebe filed his complaint alleging counts of breach of contract, fraud, violations of federal and state securities laws, and a request for attorney's fees and litigation expenses.

**Disclosure No. 2**

**Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.**

**Response**

This is a diversity matter. Therefore, subject matter jurisdiction is predicated on 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Title 13 of the Georgia Code relating to contracts contains the code provisions applicable to this matter. This matter also is controlled by Georgia law concepts related to breach of contract, fraudulent inducement, negligent misrepresentation, and unjust enrichment.

The SAFE is a security within the meaning of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), and the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)

(10). The Commitment Letter also constitutes a security under the *Howey* test and the "notes" analysis, given its investment character, its fixed return, its reliance on a corporate guarantee, and the absence of any active role by Plaintiff Striebe in the enterprise. In connection with the offer, sale, and purchase of each of these securities, Defendants used the means and instrumentalities of interstate commerce, including email, to make material misrepresentations and omissions of material fact. Consequently, federal question jurisdiction also exists in this matter. The claims for attorney's fees is subject to O.C.G.A. § 13-6-11 and the various securities statutes.

**<u>Disclosure No. 3</u>**

**Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)**

**<u>Response</u>**

See Attachment A. Plaintiff, Gosier, Chandler Heinz-Laun – associates – unpaid by Gosier; Johathan Hecht – associates – unpaid by Gosier; Kristy – corroborating witness; James DiBartolo – lender; Gabriel Silva – CFO for

MediaHedge; Representatives of Jefferies and representatives of Colbeck; Gayle Jennings-O'Byrne of WocStar Capital.

**Disclosure No. 4**

**Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)**

**Response**

As of the date of this submission, Plaintiff Striebe does not anticipate retaining an expert witness to provide testimony in this matter. If Plaintiff Striebe subsequently decides to retain an expert witness, he will update this disclosure.

**Disclosure No. 5**

**Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

**Response**

The relevant documents related to Plaintiff Striebe's claims were attached to his Complaint. They are: (a) the $250,000.00 Commitment Letter dated March 11, 2025 attached to the Complaint as Exhibit "A"; and (b) the SAFE agreement dated June 10, 2025, attached to the Complaint as Exhibit "B". Other items potentially relevant to this litigation are email communications between the parties and the witnesses disclosed in Response to Disclosure No. 4.

**Disclosure No. 6**

**In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

**Response**

Damages in this matter are the outstanding principal, interest, attorney's fees and collection/litigation costs. As of the date of this submission, they are broken down as follows:

Outstanding Principal for Commitment Letter: $250,000.00

Accrued Interest: $67,258.54 as of August 13, 2026 (accruing at $145.48/day)

SAFE Investment: $300,000.00

Attorney's Fees: $10,000.00

Filing Fees: $405.00

**TOTAL $627,663.54 (as of August 13, 2026)**

Plaintiff Striebe will amend this response as the litigation continues.

**Disclosure No. 7**

**Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

**Response**

There are no insurance agreements at issue in this litigation.

**<u>Disclosure No. 8</u>**

**Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff's cause of action and state the basis and extent of such interest.**

**<u>Response</u>**

There are no parties who have a subrogation interest in the cause of action in Plaintiff Striebe's cause of action.

Respectfully submitted this 13th day of August 2026.

/s/ *Frank G. Goldman, Esq.*
Frank G. Goldman, Esq.
Georgia Bar No. 30052
Frank G. Goldman, P.C.
PO Box 202
Avondale Estates, GA 30002
(404) 918-9145
fgoldman@fggpc.com
Counsel for Plaintiff William Striebe

## ATTACHMENT A: WITNESS LIST

Defendant **Jon Gosier** for the reasons set forth in Plaintiff's Complaint.

**Mr. Chandler Heinz-Laun**
**Mr. Jonathan Hecht**

Both were key FilmHedge executives who left its employment.

**Gabriel Silva** - CFO of FilmHedge since April 2026

**Kristy Morgan** - Third-Party Defendant.

**James Di Bartolo** - Micro lender to FilmHedge.

**Gayle Jennings O'Byrne** - Founder of WocStar Capital.

**Authorized Representatives from Jeffries** - Could shed light on negotiations with FilmHedge.

**Authorized Representatvies from Colbeck -**Could shed light on negotiations with FilmHedge.

# CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiff William Striebe to this action certifies that he has served the following pleadings upon Defendants' counsel via the Court's electronic filing system.

1. Plaintiff William Striebe's Initial Disclosures

Respectfully submitted this 13th day of August 2026.

/s/ Frank G. Goldman, Esq.
Frank G. Goldman, P.C.
Georgia Bar No. 300052
Attorney for Plaintiff William Striebe
PO Box 202
Avondale Estates, GA 30002
(678) 705-8483